FILED – USDC – NDTX – SA
APR 13 '26 AM 9:44

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

JULIANYS DANIELA DUQUE
MERCADO,

    Petitioner,

v.                                                                No. 1:26-CV-149-H

MARKWAYNE MULLIN, et al.,

    Respondents.

## ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Julianys Daniela Duque Mercado, a native and citizen of Colombia, is one such alien, having illegally entered the United States two years ago. Her habeas petition, filed after the Fifth Circuit's decision in *Buenrostro-Mendez*, demands her immediate release or a bond hearing based on the text of the INA, its implementing regulations, the Fifth Amendment, the APA, the Suspension Clause, and the *Accardi* doctrine. Dkt. No. 1.

In light of *Buenrostro-Mendez*, Duque Mercado's claims based on the INA and its implementing regulations are foreclosed. Her remaining claims fail on the merits. The due process clause does not require her release or a bond hearing. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Duque Mercado are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due

Process Clause is concerned. Duque Mercado's frivolous equal-protection, Suspension Clause, and APA claims fail, too. And her *Accardi* claim is not cognizable in habeas.

Because the legal arguments and facts presented in the petition are either meritless or otherwise indistinguishable from those addressed in the Court's prior decisions denying relief, "it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. 28 U.S.C. § 2243. Thus, while the Court would ordinarily issue an order to show cause, it exercises its discretion to forgo that step here. *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998). The petition (Dkt. No. 1) is denied.

## 1.    Background

In February 2024, Duque Mercado illegally crossed into the United States at or near Lukeville, Arizona. Dkt. No. 1 ¶ 23. After entering, she was placed into removal proceedings with a Notice to Appear. *Id.*; Dkt. No. 1-4. The NTA charged her with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. No. 1-4 at 1; *see* 8 U.S.C. § 1182(a)(6)(A)(i). Last month, she was taken into ICE custody during a routine check-in in Oklahoma. Dkt. No. 1 ¶ 24.

Duque Mercado is held without bond and neither requested nor received a bond hearing. *Id.* ¶ 34. That is because the Board of Immigration Appeals' opinion in *Matter of Yajure Hurtado* holds that aliens present in the United States without admission must be

detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025).[1]

Duque Mercado filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition states six claims for relief. Her first claim—ostensibly presented to preserve the argument for appeal—argues that her detention is unlawful under the INA and its implementing regulations. *Id.* ¶¶ 76–89. Her second claim contends that her detention violates her rights under the Fifth Amendment's Due Process Clause. *Id.* ¶¶ 90–102. She asserts in her third claim that her continued detention without a bond hearing constitutes arbitrary and capricious agency action under the APA. *Id.* ¶¶ 103–14. Fourth, she claims that she is detained pursuant to a discriminatory classification in violation of the Fifth Amendment's equal-protection guarantee. *Id.* ¶¶ 115–26. In her fifth claim, she argues that the lack of individualized review for her claims violates the Constitution's Suspension Clause. *Id.* ¶¶ 127–37. Finally, she raises an *Accardi* claim, arguing that the respondents failed to follow their own regulations in arresting and processing her. *Id.* ¶¶ 138–48.

As mentioned above, the petition preserves for appeal a statutory claim foreclosed by the Fifth Circuit's decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at

---

[1] On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado*. *Maldonado Bautista v. Santacruz*, ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026). But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief. ___ F. Supp. 3d ___, No. 1:25-CV-226, 2025 WL 3683918, at *10–14 (N.D. Tex. Dec. 19, 2025). After hearing oral argument on the issue, the Ninth Circuit issued a stay pending appeal of the Central District's class-certification order, final judgment, and post-judgment vacatur of *Yajure Hurtado* on March 31, 2026. *See Maldonado Bautista v. EOIR*, Nos. 25-7958 & 26-1044, Dkt. No. 17 at 4 (9th Cir. March 31, 2026). *Yajure Hurtado* binds immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). Thus, Duque Mercado's petition does not present an exhaustion problem. *Id.* For these reasons, insofar as Duque Mercado believes she is entitled to relief on the basis of *Maldonado Bautista*, *see* Dkt. No. 1 ¶ 48, she is mistaken.

498.  There, the Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).  The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp.  *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)).

Currently, Duque Mercado is detained at the Bluebonnet Detention Center.  Dkt. No. 1 ¶ 80.

## 2.  Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).  With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases.  *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).  Habeas exists solely to "grant relief from unlawful imprisonment or custody."  *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).  Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).  A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

3.    **Analysis**

As noted above, Duque Mercado raises six claims in her habeas petition. Dkt. No. 1 ¶¶ 76–148. The claims run the gamut; they include a statutory claim under the INA, two different claims based on the Fifth Amendment, an APA claim, a claim alleging a violation of the Supsension Clause, and an *Accardi* claim. *Id.* As explained below, *Buenrostro-Mendez* forecloses Duque Mercado's first claim. Thus, the Court turns to her remaining claims. The Court has considered whether the Due Process Clause[2] and the APA[3] entitle illegal aliens to individualized bond hearings in numerous prior cases. Even so, the Court considers the arguments raised in Duque Mercado's petition to address whether she is entitled to release or a bond hearing on any of her five remaining claims. The answer is no.

A.    **Because the Court assumes jurisdiction over Duque Mercado's petition, the Suspension Clause is not implicated.**

As a preliminary matter, the Court exercises its statutory jurisdiction under 28 U.S.C. § 2241 to address the merits of Duque Mercado's petition. Duque Mercado's assertion that the respondents have "categorically bar[red] all custody review" is therefore puzzling. Dkt. No. 1 ¶ 136. She does not explain, for example, which jurisdiction-stripping provision of the INA might be implicated by her claims, such that review would be unavailable. Section 1252(g) "does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision to execute removal orders." *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (internal

---

[2] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

[3] *See, e.g.*, *Garibay-Robledo*, 2026 WL 81679, at *10.

quotation marks omitted).  And the Supreme Court in *Jennings v. Rodriguez* rejected the respondents' proposed reading of the INA's jurisdiction-stripping provisions because it would "make claims of prolonged detention effectively unreviewable."  583 U.S. 281, 293 (2018).  Seeing no merit to Duque Mercado's Suspension Clause claim, the Court turns to the four remaining claims.  *See also Livas v. Myers*, 455 F. Supp. 3d 272, 278 n.9 (W.D. La. 2020) (noting that "no cause of action arises under the Suspension Clause itself").

> **B.**      ***Buenrostro-Mendez* forecloses Duque Mercado's INA claim.**

Duque Mercado challenges her detention as unlawful under the INA and its implementing regulations.  *Id.* ¶¶ 76–89.  But she is an "applicant for admission" within the meaning of Section 1225(a)(1).  Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).  Duque Mercado is an "alien."  She is "present in the United States."  And she "has not been admitted" because she did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer."  *Id.* § 1101(a)(13)(A) (defining "admission" and "admitted").  As an applicant for admission, binding Fifth Circuit precedent requires that she be detained without bond under Section 1225(b)(2)(A).  *See Buenrostro-Mendez*, 166 F.4th at 498.

As for the INA's implementing regulations, even if Duque Mercado's reading of the relevant regulations were correct, she is not entitled to relief.  Insofar as such regulations "contradict the plain text of [Section] 1225(b)(2)(A), the statute governs because 'a valid statute always prevails over a conflicting regulation.'"  *Benitez v. Bradford*, No. 4:25-CV-6178, 2026 WL 82235, at *1 (S.D. Tex. Jan. 8, 2026) (Eskridge, J.) (quoting *Duarte v.*

*Mayorkas*, 27 F.4th 1044, 1060 n.13 (5th Cir. 2022)).[4] Thus, Duque Mercado's INA claim fails.[5]

### C. The Fifth Amendment does not require the government to give Duque Mercado a bond hearing.

#### i. Substantive and Procedural Due Process

Next is Duque Mercado's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 90–102. She argues that the "categorical denial of any individualized custody determination violates procedural due process," and that her detention "without any individualized assessment also violates substantive due process." *Id.* ¶¶ 99–100. But either way, she is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of

---

[4] The Fifth Circuit, for its part, held that "the government's past practice" of treating unadmitted aliens as subject to Section 1226(a) pursuant to those regulations "has little to do with the statute's text." *Buenrostro-Mendez*, 166 F.4th at 506.

[5] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.2.

noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better. As an "applicant for admission," Duque Mercado has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

Despite this, Duque Mercado's claim relies on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Dkt. No. 1 ¶ 99. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme

Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-194, 2025 WL 3764016, at *7 (N.D. Tex. Dec. 30, 2025). The Supreme Court applied *Mathews* in *Landon v. Plasencia*, emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)). Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32. In the latter category, aliens "request[] a privilege and [have] no constitutional rights." *Id.*; *Thuraissigiam*, 591 U.S. at 138–39 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (quotation omitted). Critically, aliens who are released into the United States pending removal "are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (internal quotation marks omitted); *see* 8 U.S.C. § 1182(d)(5)(A) (noting that paroled aliens are not admitted and are "dealt with in the same manner as that of any other applicant for admission to the United States"); 8 C.F.R. § 1.2 (same).

With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Duque Mercado is not entitled to a bond hearing as a matter of procedural due process.

### ii.    Equal Protection

Duque Mercado also argues that her detention violates her right to equal protection under the Fifth Amendment. Dkt. No. 1 ¶¶ 115–26. She argues that "DHS's classification scheme fails rational-basis review as applied to [her]." *Id.* ¶ 121. It is a peculiar claim, considering that the primary objection to the respondents' detention policy is its over-inclusivity. *See Buenrostro-Mendez*, 166 F.4th at 508 (Douglas, J., dissenting) ("[T]he government today asserts the authority and mandate to detain millions of noncitizens in the interior . . . on the same terms as if they were apprehended at the border.").

The Supreme Court has interpreted the Fifth Amendment to "contain[] an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). "Fifth Amendment equal protection claims against federal actors are analyzed under the same standards as Fourteenth Amendment equal protection claims against state actors." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)). And "[t]o establish an Equal Protection Clause violation," Duque Mercado "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Id.* (internal quotation marks omitted).

– 10 –

Duque Mercado's argument fails many times over. She states that her "disparate treatment rests solely on DHS's post-hoc classification of her as an applicant for admission under [8 U.S.C. § 1225]." Dkt. No. 1 ¶ 119 (internal quotation marks and emphasis omitted). Because other similarly situated detainees have received bond hearings, she argues, the respondents' failure to give her a bond hearing is "arbitrary" and "bear[s] no rational relationship to present-day custody concerns." Id. ¶ 122. She claims to be "similarly situated, for custody purposes, to other noncitizens in [Section 240] proceedings who have no criminal convictions and no record of violence or dangerous behavior." Id. ¶ 118.

But this argument merely rehashes the merits of Yajure Hurtado and Buenrostro-Mendez. Those decisions held that such factual similarities are irrelevant for mandatory detention under the INA. Rather, what matters is whether (1) an alien is "an applicant for admission" and (2) "the examining immigration officer determines" that the alien "is not clearly and beyond a doubt entitled to be admitted." Buenrostro-Mendez, 166 F.4th at 499 (quoting 8 U.S.C. § 1225(b)(2)(A)). Far from arbitrary or discriminatory treatment, this classification "put aliens seeking admission lawfully on equal footing with those who entered without inspection." Id. at 508. To the contrary, it would appear arbitrary and "strange to suggest that Congress . . . preserved bond hearings exclusively for unlawful entrants." Id. Indeed, Duque Mercado's preferred construction of the INA would therefore result in far more disparate treatment of similarly situated aliens. See Garibay-Robledo, 2026 WL 81679, at *6 (describing the anomalous disparities under the pre-IIRIRA "entry doctrine"). Her frivolous equal-protection claim is therefore frivolous.

– 11 –

### D.    The APA precludes judicial review of Duque Mercado's claim.

Duque Mercado argues that "[h]abeas relief is warranted to remedy . . . unlawful agency conduct." Dkt. No. 1 ¶ 114. To assert such a claim is to defeat it. Section 704 of the APA states, in no uncertain terms, that "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review." 5 U.S.C. § 704 (emphasis added). Because Duque Mercado requests habeas relief as the remedy for her APA claim, she unwittingly admits that there is, in fact, an adequate remedy outside of the APA. Moreover, the Supreme Court recently held that "where an alien detainee's claims 'necessarily imply the invalidity of their confinement' these claims must be brought in habeas." *P.B. v. Bergami*, No. 3:25-CV-2978, 2025 WL 3632752, at *9 (N.D. Tex. Dec. 13, 2025) (O'Connor, C.J.) (quoting *J.G.G.*, 604 U.S. 670, 672 (2025)). The APA thus does not provide for judicial review of her claim.

### E.    Duque Mercado's *Accardi* claim is not cognizable in habeas.

Finally, Duque Mercado argues that the respondents failed to follow the "immigration-specific arrest and processing regulations" set out in 8 C.F.R. § 287.8(c). Dkt. No. 1 ¶ 140. "By arresting [her] without a warrant and without satisfying the regulatory requirements governing such arrests," she argues, the respondents "violated the *Accardi* doctrine." *Id.* ¶ 147. To remedy this violation, Duque Mercado demands "her immediate release" from custody. *Id.* ¶ 148.

The *Accardi* doctrine requires agencies to follow their own rules and procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). The regulatory requirements for the arrests of aliens are set

– 12 –

forth in 8 C.F.R. § 287.8(c). "An arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested . . . is an alien illegally in the United States." § 287.8(c)(2)(i). And "[a] warrant of arrest shall be obtained except when" the officer with authority to arrest "has reason to believe that the person is likely to escape before a warrant can be obtained." § 287.8(c)(2)(ii).

Merits aside, Duque Mercado's *Accardi* claim "is inapposite in a petition for habeas relief." *Huynh v. Noem*, No. 4:26-CV-017, 2026 WL 694481, *3 (N.D. Tex. Mar. 12, 2026) (O'Connor, C.J.). Writs of habeas corpus are "available to correct the denial of fundamental constitutional rights, but [they] may not be used to correct mere irregularities or errors of law." *Wooten v. Bomar*, 267 F.2d 900, 901 (6th Cir. 1959). "The Fifth Circuit has confirmed in other contexts that the failure of officials 'to follow their own policies, without more, does not constitute a violation of due process,' making a writ of habeas corpus generally not available." *Nguyen v. Noem*, 797 F. Supp. 3d 651, 664 (N.D. Tex. 2025) (quoting *Iruegas-Maciel v. Dobre*, 67 F. App'x 253, 253 (5th Cir. 2003)). In other words, habeas exists solely to "grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre*, 525 F.2d at 935–36. It is "not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the [alien] can lawfully be detained." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923).

Duque Mercado does not explain why her detention—which is mandatory under 8 U.S.C. § 1225(b)(2)(A)—is rendered unlawful by virtue of the alleged regulatory noncompliance. She states, without a supporting citation, that "[c]ontinued detention based on an arrest that contravenes binding regulations is itself unlawful." Dkt. No. 1 ¶ 145. And

– 13 –

she asserts that habeas is an "appropriate vehicle to remedy detention that results from an agency's failure to follow its own regulations," citing *Accardi*, 347 U.S. at 267–68 and *INS v. St. Cyr.*, 533 U.S. 289, 301–05 (2001). *Id.* ¶ 146. But *St. Cyr* and *Accardi* merely recognized the availability of habeas to "answer[] questions of law that arose in the context of discretionary relief." 533 U.S. at 307 (citing *Accardi*, 347 U.S. 260). They did not turn the Great Writ into a free-wheeling vehicle for challenging all manner of regulatory violations.

Therefore, the Court concludes that Duque Mercado's *Accardi* claim is not cognizable in habeas. *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (explaining that when a petitioner's claim will not necessarily spell speedier release, it does not lie within the core of habeas). Because Duque Mercado is subject to mandatory detention as a matter of binding Fifth Circuit precedent, *see Buenrostro-Mendez*, 166 F.4th at 498, nothing about the purported regulatory violation calls into question the validity of her confinement.

### 4.    Conclusion

In short, Duque Mercado, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. The Fifth Amendment does not require her release or a bond hearing in these circumstances, nor does the APA, the Suspension Clause or the *Accardi* doctrine. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

The Clerk of Court is directed to serve this Order electronically on the United States Attorney's Office for the Northern District of Texas pursuant to the current Service of Process Agreement for federal habeas petitions under 28 U.S.C. § 2241.

– 14 –

– 15 –

So ordered on April 15, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE